UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEBRASKA

In re:  CASE NO. 08-83110-TLS
 CHAPTER 7
RANDY S. RICKER
PAULA D. RICKER,

          Debtors.
_____/

THOMAS D. STALNAKER, Trustee of
the Randy S. and Paula D. Ricker Chapter
7 Bankruptcy Estate,

          Plaintiff,

          v.  ADV. NO. 11-08098-TLS

COMPUTERSHARE TRUST
COMPANY INC.,

          Defendant.
_____/

**MEMORANDUM AND ORDER**

On October 7, 2011, Plaintiff Thomas D. Stalnaker, the Chapter 7 Trustee assigned to In re Randy S. and Paula D. Ricker, No. 08-83110-TLS, filed a Complaint initiating this adversary proceeding. (Fil. #1). In the Complaint, the Trustee asserts four causes of action against Defendant Computershare Trust Company, Inc. – securities fraud, conversion, tortious interference with business relationships/expectancy and breach of fiduciary duty. Id. Computershare denies the allegations.

The case is before the Court on competing motions for summary judgment. Computershare filed Defendant's Motion for Summary Judgment on February 12, 2014, seeking judgment as a matter of law on all of the Trustee's claims. (Fil. #33). The Trustee resists the motion. The Trustee filed Plaintiff's Motion for Partial Summary Judgment on March 26, 2014, seeking judgment in his favor on the estate's conversion cause of action. (Fil. #54). Computershare resists the motion.

On March 17, 2014, the Court entered a text order deferring Computershare's motion for summary judgment. The Court ordered:

> The parties have filed a joint preliminary pretrial statement (Fil. #53) in which they agree that the pending issues are "core" bankruptcy proceedings and they consent to entry of final judgment by the bankruptcy court. However, this adversary proceeding involves tort claims by a chapter 7 trustee related to pre-petition actions or inaction by the defendant who is not a claimant in the bankruptcy case. The claims did not arise in the bankruptcy case or under Title 11, bankruptcy law is not applicable to anything in the case and conflicting state laws seem to apply. Thus, despite the agreement of the parties, it not at all clear that the issues in this case are core bankruptcy issues. Further, even if they are statutorily core, this court does not necessarily have constitutional authority to decide the issues under Stern v. Marshall and its progeny, and the issue as to whether the parties can give that authority by consent is currently under review by the Supreme Court in Executive Benefits Ins. Agency v. Arkison (In re Bellingham Ins. Agency, Inc.) (Docket No. 12-1200). Therefore, I believe it would be prudent to defer any decision in this adversary proceeding until after the Supreme Court issues its decision, which is anticipated within the next two months.

(Fil. #58).[1]

The United States Supreme Court issued its ruling in Executive Benefits Ins. Agency v. Arkison (In re Bellingham Ins. Agency, Inc.) on June 9, 2014. In its decision, the Supreme Court expressly "reserve[d] . . . for another day" a decision on the question of whether Article III permits a bankruptcy court to enter final judgment on a Stern claim with the consent of the parties. In re Bellingham Ins. Agency, Inc., 134 S.Ct. 2165, 2170 n.4 (U.S. 2014). Because the Supreme Court entered its ruling and because it appears that the Supreme Court will not address the issue of whether a bankruptcy court has authority to enter final judgment on a Stern claim with the consent of the parties in the near future, the summary judgment motions are ripe for review.

As the Court noted in its Order deferring this matter, it is not clear that the issues presented in this case are core within the meaning of 28 U.S.C. § 157(b). (Fil. # 58, #69). To the contrary, the Trustee's conversion, tortious interference with business relationships/expectancy and breach of fiduciary duties causes of action are state common law claims against Computershare, a corporation that has not filed a proof of claim in the underlying bankruptcy case. The Trustee's securities fraud cause of action is grounded in federal securities

---

[1] On April 21, 2014, the Court entered another text order, identical to the March 17, 2014 text order, deferring the Trustee's motion for partial summary judgment. (Fil. #69).

law; it does not arise under bankruptcy law.  Accordingly, the Trustee's claims are not core proceedings.

The Trustee's claims and causes of action are related to a bankruptcy case, however. "'[T]he test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in the bankruptcy.'"  Abramowitz v. Palmer, 999 F.2d 1274, 1277 (8th Cir. 1993) (quoting Dogpatch Props. USA, Inc. v. Dogpatch USA, Inc., (In re Dogpatch), 810 F.2d 782, 786 (8th Cir. 1987)); see also GAF Holdings, LLC v. Rinaldi, (In re Farmland Industries, Inc.), 567 F.3d 1010, 1019 (8th Cir. 2009).  In this case, the Trustee is seeking to pursue a prepetition chose of action for the benefit of unsecured creditors.  The litigation will alter Debtors' rights and liabilities and the outcome may impact the administration of the bankruptcy estate in this case.  Therefore, the Court finds that the Trustee's claims are non-core proceedings under section 157(c) and that it has subject matter jurisdiction over this adversary proceeding.     Pursuant to 28 U.S.C. § 157(c)(2), a bankruptcy court may enter a final judgment in a non-core related proceeding if the parties consent.  28 U.S.C. § 157(c)(2); Abramowitz, 999 F.2d at 1279.  Accordingly, the Court concludes that, with the consent of the parties, it has jurisdiction to enter a final order on the claims at issue in this case.  In the event that the district court or bankruptcy appellate panel determines that this case involves an issue to which the parties cannot consent, this Memorandum and Order constitutes proposed findings of fact and conclusions of law.

For the reasons provided below, the Court finds that all four of the Trustee's claims are barred by statutes of limitation or otherwise not actionable.  Therefore, Computershare's Motion for Summary Judgment is GRANTED and the Trustee's Motion for Partial Summary Judgment is DENIED.  The Complaint is dismissed.

SUMMARY JUDGMENT STANDARDS

Rule 56 of the Federal Rules of Civil Procedure governs summary judgment motions.  This rule is made applicable to bankruptcy proceedings by Rule 7056 of the Federal Rules of Bankruptcy Procedure.  Summary judgment is only appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56©.

Procedurally, the initial burden is on the moving party to establish the lack of any genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If this is accomplished, the burden then shifts to the nonmoving party to offer affirmative evidence and specific facts showing there is a genuine dispute on a material factual issue.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  A fact is material when it "'might affect the outcome of the suit under the governing law.'"  Johnson v. Crooks, 326 F.3d 995, 1005 (8th Cir. 2003) (quoting Anderson, 477 U.S. at 248).  Thus, "the substantive law will identify which facts are material." Anderson, 477 U.S. at 248.  A dispute about a material fact is genuine only when "'a reasonable jury could return a verdict for the nonmoving party' on the question."  Woods v. DaimlerChrysler Corp., 409 F.3d 984, 990 (8th Cir. 2005) (quoting Anderson, 477 U.S. at 248).

3

A party resisting summary judgment has the burden to designate the specific facts that create a triable question of fact.  See Crossley v. Georgia-Pacific Corp., 355 F.3d 1112, 1114 (8th Cir. 2004).  In doing so, the  nonmoving party may not rest on the allegations in its pleadings, but by affidavit and other evidence must make a showing sufficient to establish the existence of every essential element of its claims.  Celotex Corp., 477 U.S. at 322-23.  "If the nonmoving party cannot muster sufficient evidence to make out its claim, a trial would be useless and the moving party is entitled to summary judgment as a matter of law."  Id. at 331 (citing Anderson, 477 U.S. at 249); Whitley v. Peer Review Sys., Inc., 221 F.3d 1053, 1055 (8th Cir. 2000) (noting that summary judgment "is appropriate where one party has failed to present evidence sufficient to create a jury question as to an essential element of its claim.").

 "Mere arguments or allegations are insufficient to defeat a properly supported motion for summary judgment. . . ."  FDIC v. Bell, 106 F.3d 258, 263 (8th Cir. 1997).  Likewise, "[c]onclusory affidavits do not provide a basis upon which to deny motions for summary judgment."  Armour & Co., Inc. v. Inver Grove Heights, 2 F.3d 276, 279 (8th Cir. 1993) (citing Jackson v. Anchor Pkg. Co., 994 F.2d 1295 (8th Cir. 1993)).  The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

In analyzing the pleadings and the evidence, the Court reviews the record in the light most favorable to the nonmoving party and must afford that party all reasonable inferences.  Blocker v. Patch (In re Patch), 526 F.3d 1176, 1180 (8th Cir. 2008) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)); Woods v. DaimlerChrysler Corp., 409 F.3d 984, 990 (8th Cir. 2005).

FACTUAL BACKGROUND

In 2000, representatives of Reclamation Consulting and Applications, Inc. (RCAI), a Colorado corporation (Fil. #43, ¶ 7), contacted Debtor Randy Ricker.[2]  RCAI represented to Ricker that it possessed a unique product and a once-in-a-lifetime investment opportunity.  (Fil. #1).  According to the Trustee, RCAI represented that it needed to raise capital and that Ricker had the opportunity to loan RCAI money in exchange for an ownership interest in RCAI.  Id.  The Trustee also claims that RCAI guaranteed Ricker a return of not less than 12% per annum, options to buy additional RCAI stock at very favorable prices and the ability to cash out or receive his RCAI stock at any time and upon demand.  Id.

Ricker personally invested a significant amount of money in RCAI through loans and stock purchases.  He also promoted RCAI and raised a substantial amount of money from others that was invested in RCAI shares.  The majority, if not all, of Ricker's fund-raising efforts occurred in Nebraska, and the majority of the money he raised was from Nebraska residents.  Ricker did not raise any funds in Colorado, do any work in Colorado or travel to Colorado at any point for purposes related to the transactions at issue in this lawsuit.  Ricker accumulated shares

---

[2] Ricker was in Nebraska when these representatives contacted him and at all times when he communicated with them after the first contact.

of RCAI stock, some of which belonged to him and some of which belonged to investors who are now creditors of his bankruptcy estate.

Computershare, which is incorporated in Colorado and has its principle office in Colorado (Fil. #43), acted as a transfer agent on behalf of RCAI. (Fil. #38, p. 3). As a transfer agent, Computershare registered the issuance and transfer of RCAI shares (including shares presented by Ricker) and maintained records of RCAI stock transfers. Computershare performed all of the services at issue in this case in Colorado.[3] Ricker never authorized or consented to

---

[3] Computershare argues that the "actions complained by Ricker in his Complaint relate to the securities transfer services that Computershare performed in Golden, Colorado." (Fil. #31, p. 14). It repeats this claim in other places in its brief in support of Defendant's Motion for Summary Judgment (Fil. #31), its reply brief (Fil. #52), and Defendant's Brief in Opposition to Plaintiff's Motion for Partial Summary Judgment (Fil. #61). Evidence supporting this allegation includes:

• Correspondence to and from Computershare which shows that the street address for Computershare is in Golden, Colorado. See e.g., Exs. to the Aff. of Randy Ricker (Fil. #45-2, p. 10-11); Exs. to the Aff. of Greg Viega (Fil. #70, p.8).

• The Trustee's admission that Computershare's principal place of business is in Golden, Colorado. (Fil. #41, p. 3).

• Plaintiff's Answers to Defendant's First Set of Interrogatories in which the Trustee lists a Golden, Colorado address for each of the Computershare employees or representatives with whom the Trustee had direct contact regarding Ricker's transactions with RCAI. (Fil. #35-1, p. 17). When asked to name Computershare employees or representatives who refused to comply with Ricker's request for unrestricted transfer, who communicated with Ricker regarding the transfer or who participated in alleged wrongful conduct, the Trustee named Jane Bell, Jennifer Hahn and Dottie Anderson, all of whom worked at a Golden, Colorado address. (Fil. #35-1, pp. 17, 20-30).

• Computershare offered documents showing its principal office and registered agent were in Colorado from 2000 through June 2007. (Fil. #35-1, p. 63-65).

• Defendant's Responses and Objections to Plaintiff's First Set of Interrogatories in which Computershare identified "any person at Computershare responsible for reviewing, considering, approving, authorizing and/or denying a request for the transfer, issuance, or redemption of shares of reclamation Consulting and Applications, Inc. ("RCAI") stock or Alderox, Inc. ("Alderox") stock." The contact information for current employees listed in this response included a Colorado address. (Fil. #35-1, p. 530).

The Trustee does not dispute Computershare's allegation that it performed the services at issue in Colorado.

5

Computershare holding, handling, retaining or transferring his shares of RCAI stock to any person or entity other than himself.

    Ricker made numerous written demands on Computershare for the unrestricted issuance of stock certificates. Presumably these demands began before January 2003, when Computershare denied Ricker's demand for the unrestricted transfer of certificate number 021291. Computershare denied Ricker's demands for the following certificates:

| Certificate No. | No. of Shares | Date Denied |
| --- | --- | --- |
| 021291 | 22,833 | 1/23/03 |
| 021854 | 75,000 | 3/23/06 |
| 022154 | 167,500 | 3/23/06 |
| 021853 | 110,000 | 3/23/06 |
| 021788 | 42,000 | 3/23/06 |
| 021982 | 76,375 | 3/23/06 |
| 021789 | 3,900 | 9/21/06 |
| 022500 | 360,000 | 9/21/06 |
| 022495 | 331,553 | 9/21/06 |
| 022498 | 597,787 | 9/21/06 |
| 022499 | 250,000 | 9/21/06 |
| 022497 | 350,000 | 9/21/06 |
| 022496 | 720,000 | 9/21/06 |
| 022421 | 2,552,260 | 9/21/06 |
| 022085 | 1,044,032 | 4/8/04 |
| 021994 | 6,667 | 4/8/04 |
| 022424 | 2,543,000 | 4/8/04 |
| 022034 | 98,000 | 8/25/06 |
| 022059 | 30,000 | 8/25/06 |
| 022058 | 48,750 | 8/25/06 |
| 022701 | 6,737,592 | 6/19/08 |
| 022654 | 833,333 | 6/19/08 |

(Fil. #44).

    Ricker continued to make demands to representatives of Computershare for the unrestricted issuance of the shares listed above after October 7, 2008. According to Ricker, he communicated regularly with Computershare, attempting to obtain the shares because the other investors were demanding payment of the money owed to them and the delivery of their shares by him. He also wanted to sell his shares because he needed the money. Ricker testified that he communicated to Computershare the urgency of issuing the shares and his expectation that the unrestricted shares would be delivered to him immediately. He also communicated the investors' concerns and demands as well as his own financial problems.

    After October 7, 2008, and while he was making demands for the unrestricted issuance of his RCAI shares, Ricker claims he communicated to representatives of Computershare that he suspected RCAI insiders Scott Carpenter and Michael Davies were not acting in the best

interests of the shareholders. Ricker told representatives of Computershare that Carpenter and Davies seemed to be using the investors' money for personal purposes and expenditures unrelated to RCAI and were engaging in suspicious and untruthful behavior.

According to Ricker, representatives of Computershare told him on multiple occasions that Computershare had no basis to withhold or restrict any of the RCAI shares and that he was entitled to the unrestricted transfer of his shares. Ricker testified that representatives of Computershare also told him that Computershare was delivering unrestricted shares of RCAI stock to Carpenter and Davies at a time when it was refusing to deliver unrestricted shares of RCAI stock to Ricker and other investors and after Ricker informed Computershare of his concerns related to the behavior of Carpenter and Davies.

Computershare never delivered the unrestricted shares of RCAI to Ricker. Computershare's records reflect that it is still holding these shares.

Ricker claims he made demands on Computershare to issue the following number of shares when the shares were worth the listed amounts:

| Shares Demanded | Share Value at the Time ($) | Claimed Loss ($) |
|---|---|---|
| 5,552,260 | 0.25 | 1,388,065.00 |
| 258,740 | 0.25 | 64,685.00 |
| 1,044.32 | 0.98 | 1,023,151.36 |
| 474,775 | 0.33 | 156,675.75 |

Ricker also demanded that Computershare issue shares in the name of JoAnne Kalenda for which he paid $5,000. Computershare delayed issuing the Kalenda shares until two years later when the value of the shares decreased, resulting in a loss of $5,000. All of the RCAI shares are now worthless.

As a result of Computershare's refusal to provide Ricker his shares or their fair market value, Ricker could not repay the investors, he could not give the investors their shares, and he was forced to seek bankruptcy protection. Ricker claims that if Computershare had delivered the shares when he demanded them, he would not have been forced to file for bankruptcy relief and could have paid all of his creditors.

Randy and Paula Ricker filed a Chapter 7 bankruptcy petition on December 2, 2008, in the United States Bankruptcy Court for the District of Nebraska.

DISCUSSION

I.  Common Law Causes of Action

In his Complaint, the Trustee asserts three common law causes of action: conversion, tortious interference with business relationships/expectancy and breach of fiduciary duty.

    A.    Choice of Law

The parties dispute whether Colorado or Nebraska law governs this case. Computershare asserts that Colorado law applies because Colorado has the strongest nexus to the actions taken by Computershare that form the basis of the Trustee's claims. (Fil. #31, p. 14). The Trustee asserts simply that "Colorado law and Colo.Rev.Stat.Ann. § 4-8-401 have no applicability in this case [and] that Nebraska substantive law and common law control." (Fil. #41, p. 7).

The Court must resolve this question because the applicable statute of limitations differs between the two states.[4] Under Colorado law, all actions arising under the Uniform Commercial Code (UCC)[5] must be filed within three years after the cause of action accrues. Curragh Queensland Mining Ltd. v. Dresser Indus., Inc., 55 P.3d 235, 239 (Colo. App. 2002) (citing Colo. Rev. Stat. Ann. § 13-80-101(1)(a)). Under Nebraska law, these causes of action must be brought within four years after the causes of action accrue. Neb. Rev. Stat. § 25-204, -207, -212. Therefore, the first issue the Court must decide is whether Colorado or Nebraska law applies.

"The bankruptcy court applies the choice of law rules of the state in which it sits." Amtech Lighting Servs. Co. v. Payless Cashways, Inc. (In re Payless Cashways), 203 F.3d 1081, 1084 (8th Cir. 2000) (citation omitted). The court in Steen v. Murray detailed the history of the application of statutes of limitations in cases litigated in Nebraska:

> Before 2006, Nebraska's statutes of limitations were applied to actions litigated in Nebraska, because statutes of limitations were considered to be procedural rather than substantive.
>
> * * *
>
> In 2006, the Nebraska Legislature adopted the Uniform Conflict of Laws Limitation Act ("UCLLA"), Neb. Rev. Stat. §§ 25–3201 through 25–3207 (Reissue 2008). The UCLLA provides that when a claim is based on the substantive law of Nebraska, Nebraska statutes of limitations will apply. Neb. Rev. Stat. § 25–3203(1)(b). If a claim is based on the substantive law of another

---

[4] See Bacon v. Liberty Mut. Ins. Co., 688 F.3d 362, 366 (8th Cir. 2012) (concluding that no choice of law analysis is necessary where there was no "true conflict" between the laws of two states); Softchoice Corp. v. MacKenzie, 636 F.Supp.2d 927, 936 (D. Neb. 2009) (stating that when the relevant legal principles are the same in both states, a "false conflict" exists and the court need not resolve the choice of law issue); Am. Nat'l Bank v. Medved, 801 N.W.2d 230, 238 (Neb. 2011) (stating that "before entangling itself in messy issues of conflict of laws, a court ought to satisfy itself that there actually is a difference between the relevant laws of the different states.") (footnote omitted).

[5] For reasons discussed below, the UCC as adopted by state law displaces The Trustee's claims for conversion, tortious interference with business relationships/expectancy and breach of fiduciary duty.

8

>state, however, then the other state's statutes of limitations will apply, as well as
>the other state's accrual and tolling rules. §§ 25–3203(a), 25–3204.

Steen v. Murray, 955 F.Supp.2d 1030, 1035 (D. Neb. 2013). Accordingly, the Court must determine whether the claims in this case are substantively based on Nebraska or Colorado law. The Court applies Nebraska law to this analysis].

Nebraska follows the Restatement (Second) of Conflict of Laws when making choice-of-law determinations. BNSF Ry. Co. v. L.B. Foster Co., 917 F.Supp.2d 959, 968 (D. Neb. 2013) (citation omitted). Nebraska courts use the "most significant relationship" test from the Restatement (Second) of Conflict of Laws § 145 for resolving choice-of-law questions in tort actions. Id. Under section 145, the factors to be considered are (1) the place where the injury occurred, (2) the place where the conduct causing the injury occurred, (3) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (4) the place where the relationship, if any, between the parties is centered. Restatement (Second) Conflict of Laws § 145 (1971). Section 145 further provides that these factors are to be evaluated according to their relative importance with respect to the particular issue. Id.; see also Carrillo v. Tifco Indus., Inc., 547 Fed.Appx. 419,423 (5th Cir. 2013) ("[T]he factors should be considered for their quality and not their quantity.").

The first factor is the place where the injury occurred. The injury here is the economic harm Ricker alleges he suffered as a result of Computershare's refusal to provide him his shares in RCAI. This injury occurred in Nebraska because that is where Ricker resided and where Computershare's actions took harmful effect. Ricker suffered the economic impact of Computershare's actions in Nebraska, and this factor favors application of Nebraska law.

The next factor is where the conduct causing the injury occurred. The Trustee's claims derive from Computershare's services that were performed in Colorado. This factor favors application of Colorado law.

The third factor is the domicile, residence, nationality, place of incorporation and place of business of the parties. Ricker is a resident of Nebraska. Computershare is incorporated in and has its principle office in Colorado. This factor favors application of neither Nebraska nor Colorado law.

The fourth and final section 145 factor is the place where the relationship, if any, between the parties is centered. The relationship in this case involves Computershare's role as a securities transfer agent with certain obligations to Ricker, who demanded the unrestricted transfer of RCAI stock. RCAI and Computershare are incorporated in Colorado. Both parties offered evidence suggesting that Computershare's work related to the issuance and transfer of RCAI stock was performed in Colorado. See supra n.3. Thus, Computershare's allegedly untrue statements, fraudulent or deceitful business practices, wrongful exercise of dominion and control over RCAI stock, as well as its interference with business practices and breach of fiduciary duties all took place in Colorado.

9

      The Trustee does not dispute Computershare's claim that it performed its work in Colorado, but emphasizes that Ricker raised money for RCAI in Nebraska and from Nebraskans. This argument is not persuasive. As the Restatement suggests, it is the relationship between the plaintiff and the defendant that matters, not relationships between or among other parties or entities. See Restatement (Second) of Conflict of Laws § 145 cmt. e (considering the place where the relationship between the parties is centered "[w]hen there is a relationship between the plaintiff and the defendant."). Because the alleged fraud and wrongful refusal to transfer stock that caused Ricker harm occurred in Colorado, the Court finds that the place where the relationship between Ricker and Computershare is centered is Colorado. See Ajjarapu v. AE Biofuels, Inc. (In re Ajjarapu), 728 F.Supp.2d 1154, 1163-64 (D. Colo. 2010).[6]

      Considering all four factors according to their relative importance with respect to the issues in this case, Colorado has the most significant relationship to the Trustee's claims against Computershare. The Restatement also instructs, however, that the weighing of these tort-specific factors should be guided by the seven general choice-of-law considerations set out in § 6(2):

    (a) the needs of the interstate and international systems,

    (b) the relevant policies of the forum,

    (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

    (d) the protection of justified expectations,

    (e) the basic policies underlying the particular field of law,

---

[6] The facts in Ajjarapu are similar to this case in that the conduct that allegedly caused plaintiff's injury occurred in Colorado and the parties' communications were with the transfer agent who was located in Colorado. In re Ajjarapu, 728 F.Supp.2d at 1163-64. The Ajjarapu court reasoned:

> CST, a Colorado corporation, was responsible for removing the restrictive legend on the Plaintiffs' stock certificates. Plaintiffs attempted to get CST to remove the restrictive legend, and CST's failure to comply with Plaintiffs' request is why Plaintiffs allegedly suffered damages. Thus, the conduct that caused the injury occurred in Colorado. Colorado is also the place where the relationship between Plaintiffs, AE, and CST is centered. Both Plaintiffs and AE communicated with CST about whether CST could remove the restrictive legend. Because Colorado has the most significant relationship to Plaintiffs' state law claims, i.e., their UCC, conversion, and breach of fiduciary duty claims, the Court finds that Colorado law applies to these claims.

Id. (citations omitted).

    (f) certainty, predictability and uniformity of result, and

    (g) ease in the determination and application of the law to be applied.

Restatement (Second) of Conflict of Laws § 6(2).

    The Comments to section 145 explain that "[t]he factors in Subsection (2) of the rule of § 6 vary somewhat in importance from field to field." Restatement (Second) of Conflict of Laws § 145, cmt. b. More specifically, the Comments explain that the section 6 factors of relatively greater importance for a tort action are "the needs of the interstate and international systems [§ 6(2)(a)], the relevant policies of the forum [§ 6(2)(b)], the relevant policies of other interested states [§ 6(2)(c)] and particularly of the state with the dominant interest in the determination of the particular issue, and the ease in the determination and application of the law to be applied [§ 6(2)(g)]." Id.; see also Restatement (Second) of Conflict of Laws, § 145, cmt. c (stating that "the interest of a state in having its tort rule applied in the determination of a particular issue will depend upon the purpose sought to be achieved by that rule and by the relation of the state to the occurrence and the parties.").

    As discussed below, the Trustee's common law claims are displaced by the UCC.[7] Both Colorado and Nebraska adopted the UCC, including provisions specific to transfer agents.[8] Since the UCC provisions adopted by Colorado and Nebraska are nearly identical, it appears that both states endorse the same standard commercial policies and have similar interests in protecting justified expectations and in promoting certainty, predictability and uniformity of result. The determination and application of the law to be applied in this case is easy because, under the UCC as adopted in both Colorado and Nebraska, Computershare's obligations are imposed by the state in which the issuer, RCAI, was incorporated: Colorado. See note 8. Therefore, while the Restatement's general choice of law considerations do not favor the application of either Colorado or Nebraska law because both states adopted the same standard commercial laws, it is apparent that Colorado law governs a claim for the breach of any duties and obligations imposed on a transfer agent for wrongful refusal to register a transfer of stock issued by a Colorado corporation. Id.

---

[7] The Trustee alleges three common law causes of action, all of which are displaced. He also alleges a securities fraud cause of action under federal law, which is not part of the conflict analysis.

[8] See Colo. Rev. Stat. § 4-8-401 and Neb. U.C.C. § 8-401 (imposing duties upon issuers to register stock transfers and providing that "[i]f an issuer is under a duty to register a transfer of a security, the issuer is liable to a person presenting a certificated security or an instruction for registration or to the person's principal for loss resulting from unreasonable delay in registration or failure or refusal to register the transfer."); Colo. Rev. Stat. § 4-8-407 and Neb. U.C.C. § 8-407 (providing that a transfer agent takes on the obligations of the issuer with respect to the transfer of the issuer's securities); Colo. Rev. Stat. § 4-8-110(a), (d) and Neb. U.C.C. § 8-110(a), (d) (providing that an issuer's obligations related to the transfer of securities are defined by the state law of the state in which the issuer is incorporated).

In summary, after considering the section 145(2) factors and the section 6 considerations that frame the "most significant relationship" test for conflict-of-laws determinations under Nebraska law, the Court finds that Colorado has the dominant interest in the issues presented, and application of Colorado law is consistent with the pertinent considerations. Therefore, the substantive legal issues in this case are governed by Colorado law. Thus, in accordance with Neb. Rev. Stat. § 25-3203(1)(a), Colorado's relevant statutes of limitations apply in this case.[9]

      B.      Application of Colorado Law

           1.      The UCC as Adopted by Colorado Displaces Common Law Claims

Computershare argues that the UCC as adopted by Colorado displaces the estate's common law claims for conversion, tortious interference with business relationships/expectancy and breach of fiduciary duty. Further, under Colorado's version of the UCC, these claims are subject to a three-year statute of limitations. The Trustee counters that even if the estate's claims are displaced by the UCC, they were still timely brought.

Colorado adopted the UCC in 1965. Georg v. Metro Fixtures Contractors, Inc.,178 P.3d 1209, 1212 (Colo. 2008) (citation omitted). Section 4-1-103(b) of the Colorado Revised Statutes provides that common law supplements the statutory provisions of the UCC unless the particular provisions of the UCC displace common law. Colo. Rev. Stat. § 4-1-103(b).[10] The Supreme Court of Colorado clarified, however, that common law is displaced whenever both the code and the common law would provide a means of recovery for the same loss. It explained:

> In adopting the Uniform Commercial Code, the General Assembly has expressly indicated its intent that preexisting principles of law and equity have

---

[9] The Court is aware of the Nebraska statute that may save a cause of action barred by another state. Section 25-3203(2), Neb. Rev. Stat., provides:

If a cause of action arises outside of this state and the action is barred under the applicable statute of limitations of the place where it arose, the action may be maintained in this state if the plaintiff is a resident of this state who has owned the cause of action since it accrued and the cause of action is not barred under the applicable statute of limitations of this state.

The Court notes that the Trustee does not argue that this statute applies. Even if he had, however, the Court finds the statute inapplicable because the estate has not owned the causes of action since they accrued.

[10] Section 4-1-103(b) provides: "Unless displaced by the particular provisions of this title, the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause shall supplement its provisions." Colo. Rev. Stat. § 4-1-103(b).

12

continuing vitality and be treated as supplementing the code, unless they have been "displaced" by any of its particular provisions. § 4–1–103, C.R.S. (2007). While we have had little cause to construe the term "displaced" as it appears in section 4–1–103, we long ago declined to find that common law causes of action survive adoption of the code unless they have been explicitly referenced by name. Other jurisdictions have also rejected such a narrow understanding of the code's doctrine of "displacement" and have more fully explained their construction in terms of the code's purposes and structure.

The concept of "displacement," as used in the code, has been described as allowing the code to abrogate common law rules without requiring unequivocal, explicit reference to the common law in each statutory section that effects a modification. Rather, in furtherance of the code's goal of uniformity in commercial transactions, which would be undermined by variations in the common law among the several states, it should also be understood to intend the displacement of the common law whenever both the code and the common law would provide a means of recovery for the same loss.

Clancy Systems Int'l, Inc. v. Salazar, 177 P.3d 1235, 1237 (Colo. 2008) (citations omitted).

Here, by alleging common law claims – breach of fiduciary duty, conversion and tortious interference with business relationship/expectancy – the Trustee is seeking a remedy for Computershare's alleged failure to promptly transfer RCAI shares to Ricker. See Compl. ¶¶ 22-30, ECF No. 1. Part 4 of article 8 of the UCC entitled "Registration" addresses an issuer's obligation to register a transfer of securities. Colo. Rev. Stat. §§ 4-8-401 to -407. Specifically, section 4-8-401 imposes a duty on an issuer to register a transfer if certain preconditions exist. Colo. Rev. Stat. § 4-8-401(a). Section 4-8-401 further provides: "If an issuer is under a duty to register a transfer of a security, the issuer is liable to a person presenting a certificated security or an instruction for registration or to the person's principal for loss resulting from unreasonable delay in registration or failure or refusal to register the transfer." Colo. Rev. Stat. § 4-8-401(b). Although Computershare is a transfer agent, not an issuer, section 4-8-407 imposes the section 4-8-401 duties and liabilities on transfer agents as well:

> A person acting as . . . transfer agent . . . for an issuer in the registration of a transfer of its securities, in the issue of new security certificates or uncertificated securities, or in the cancellation of surrendered security certificates has the same obligation to the holder or owner of a certificated or uncertificated security with regard to the particular functions performed as the issuer has in regard to those functions.

Colo. Rev. Stat. § 4-8-407. Therefore, because the UCC as adopted by Colorado imposes duties and liabilities and provides a remedy for a transfer agent's refusal to transfer shares, the UCC displaces common law actions for that same loss. See In re Ajjarapu, 728 F.Supp.2d at 1164 (finding that section 4-8-401 displaces plaintiffs' common law tort claims of conversion and breach of fiduciary duty where the plaintiff initiated these common law actions against the issuer

for its failure to transfer the plaintiff's shares). The Trustee's common law causes of action are, therefore, dismissed.

        2.        Colorado's Statute of Limitations Bars a Cause of Action Under Its Version of the UCC

The Trustee argues that even if the Trustee's common law causes of action are displaced by the UCC, these claims should not be dismissed because Computershare had notice of a claim under the UCC and is defending against it. Computershare's knowledge of a potential cause of action does not excuse the Trustee from seeking to amend his Complaint to allege it. In this case, however, such a motion to amend the Complaint to allege a cause of action under Colorado's version of the UCC seeking a remedy for Computershare's alleged failure to properly transfer RCAI shares to Ricker would be futile.

Section 4-8-110 provides that the local law of the issuer's jurisdiction governs the rights and duties of the issuer. Colo. Rev. Stat. § 4-8-110(a). "'Issuer's jurisdiction' means the jurisdiction under which the issuer of the security is organized." Colo. Rev. Stat. § 4-8-110(d). Colorado law therefore applies to Computershare's obligations regarding the transfer of RCAI securities because RCAI, the issuer, was incorporated in Colorado.

In Colorado, all actions arising under the UCC must be filed within three years after the cause of action accrues. Colo. Rev. Stat. § 13-80-101(1)(a). A cause of action accrues "when the injury, loss, damage, or conduct giving rise to the cause of action is discovered or should have been discovered by the exercise of reasonable diligence." Colo. Rev. Stat. § 13-80-108(8).

According to Ricker, Computershare first denied Ricker's demand for the issuance of a stock certificate in 2003. (Fil. # 44, p. 53-61). Computershare also denied Ricker's demands for the issuance of three different stock certificates in 2004, sixteen in 2006 and two on June 19, 2008. Id. Thus, Computershare denied Ricker's request to transfer each of the certificates at issue at least one time on or before June 19, 2008, more than three years prior to filing this lawsuit. In the exercise of reasonable due diligence, Computershare's denials of the transfer requests should have alerted Ricker to both Computershare's conduct and the injury to him. In other words, Ricker knew (or should have known) that Computershare denied his requests for transfers of his stock certificates on or before June 19, 2008. Accordingly, Ricker's claim (and now the Trustee's causes of action) accrued when Computershare denied the transfer of his shares. See Colo. Rev. Stat. § 4-8-401 (providing a cause of action for failure to properly register a transfer). The Trustee did not a file lawsuit against Computershare until October 7, 2011, more than three years after the causes of action accrued. The Trustee's claim under the Colorado version of the UCC would, therefore, be time barred.

The Trustee asserts that a claim under the UCC is not barred by the statute of limitations because Ricker made demands upon Computershare for the RCAI shares within three years of the filing of this lawsuit. Specifically, the Trustee maintains that Ricker continued to contact Computershare and demand his shares after the first transfer denial and after October 7, 2008. The Trustee further alleges that "Computershare's tortious acts are continuing and the statute of limitations does not begin to run until those tortious acts cease." (Fil. #41, pp. 8-9). Because

Computershare is still holding the shares that now belong to the bankruptcy estate, the Trustee asserts the statute of limitations has not run. The Trustee points to no Colorado authority to support his assertion that the continuing tort doctrine applies to Computershare's alleged conduct.

Colorado does not recognize the continuing violation doctrine in the context of UCC claims.[11] Accordingly, the fact that Ricker continued to make demands for the issuance of the same stock certificates within the three-year statute of limitations is immaterial to the statute of limitations analysis. Any claim by the Trustee for wrongful refusal to register the transfer of RCAI securities under the UCC as adopted by Colorado is time barred.

II.     Securities Fraud

The Trustee claims that Computershare engaged in securities fraud in violation of section 10(b) of the Securities Exchange Act of 1934 and Securities Exchange Commission Rule 10b-5 promulgated under Section 10(b).[12] Computershare asserts this claim is also barred by the applicable statute of limitations.

The applicable statute of limitations provides:

> [A] private right of action that involves a claim of fraud, deceit, manipulation, or contrivance in contravention of a regulatory requirement concerning the securities laws . . . may be brought not later than the earlier of–

---

[11] See Tara Woods Ltd. P'ship v. Fannie Mae, 731 F.Supp.2d 1103, 1120 (D. Colo. 2010) ("Colorado limits the application of the 'continuing violation' doctrine to employment discrimination cases." (citing Polk v. Hergert Land & Cattle Co., 5 P.3d 402, 405 (Colo. App. 2000))); see Salas v. United States, 2012 WL 4097303, at *3 (D. Colo. Sept. 18, 2012), vacated, 527 Fed.Appx. 813 (10th Cir. 2013) (stating that "the continuing tort doctrine 'does not apply to actions that are complete in themselves, rather, it applies to a continuing course of conduct, which, over time, causes injury.'"); Kelley v. New York Life Ins. and Annuity Corp., 2008 WL 1782647, at *6 (D. Colo. Apr. 17, 2008) ("My research reveals that Colorado recognizes the continuing tort doctrine in the context of trespass and nuisance cases . . . . [T]he tort of civil theft is more akin to conversion, which is defined as 'any distinct, unauthorized act of dominion or ownership exercised by one person over personal property belonging to another.' A conversion of personal property occurs, at the latest, when a demand for its return is refused. It is not a continuing tort; damages for a conversion are based upon the property's fair market value at the time and place of the conversion, plus interest thereon.") (citations omitted); Meyerstein v. City of Aspen, 282 P.3d 456, 470 (Colo. App. 2011) ("The continuing tort doctrine has only been applied in limited circumstances, including in cases involving torts to property, environmental law, employment discrimination law, antitrust law, and criminal law.") (citation omitted).

[12] Section 10(b) of the Securities Exchange Act of 1934 is located at 15 U.S.C. § 78j(b). Securities Exchange Commission Rule 10b-5 is located at 17 C.F.R. § 240.10b-5.

  (1) 2 years after the discovery of the facts constituting the violation; or

  (2) 5 years after such violation.

28 U.S.C. § 1658(b). Construing section 1658(b)(1) for the first time, the United States Supreme Court held that "a cause of action accrues (1) when the plaintiff did in fact discover, or (2) when a reasonably diligent plaintiff would have discovered, 'the facts constituting the violation'—whichever comes first." Merck & Co., Inc. v. Reynolds, 559 U.S. 633, 637 (2010) (quoting 28 U.S.C. § 1658(b)(1)).

  Computershare's alleged wrongful failure to transfer RCAI shares to Ricker occurred between 2003 and June 2008. During this time period, Computershare denied Ricker's demands to transfer shares on numerous occasions. Therefore, Ricker discovered the facts constituting the alleged securities fraud violations no later than June 2008. Even if he had not actually discovered these facts, a reasonably diligent plaintiff would have discovered "the facts constituting the violation." The Trustee filed his complaint on October 7, 2011, more than two years after the date of Ricker's actual discovery of the facts constituting the alleged violations. The Trustee's securities fraud claim is, therefore, barred by the statute of limitations in 28 U.S.C. § 1658(b)(1).

### THE TRUSTEE'S MOTION FOR PARTIAL SUMMARY JUDGMENT

  The Trustee seeks partial summary judgment on his conversion claim. For the reasons stated above, this claim is displaced by the UCC as adopted by Colorado. Further, any cause of action under Colorado's version of the UCC is barred by the statute of limitations. Accordingly, the Trustee's motion for partial summary judgment as to the conversion claim is DENIED.

### CONCLUSION

  For the reasons provided above, Defendant Computershare Trust Company, Inc.'s Motion for Summary Judgment (Fil. #33) is GRANTED. Plaintiff Thomas D. Stalnaker's Motion for Partial Summary Judgment (Fil. #54) is DENIED. Judgment shall be entered in favor of Defendant Computershare Trust Company, Inc. on all four causes of action asserted by Plaintiff Thomas D. Stalnaker. The Complaint is DISMISSED with prejudice.

  The Court has considered all other arguments and deems them to be without merit.

**JUDGMENT SHALL BE ENTERED ACCORDINGLY.**

Dated this September 22, 2014.

                  **SHON HASTINGS, JUDGE**
                  **UNITED STATES BANKRUPTCY COURT**
                  **SITTING BY DESIGNATION**